IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| LEE COMIER, JR., | ) | No. CV 05-00540-PHX-NVW (CRP) |
| Petitioner, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | |
| | ) | |
| DORA B. SCHRIRO, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

On February 15, 2005, Petitioner Lee Comier, Jr., presently an inmate confined in the Arizona State Prison Complex in Florence, Arizona, filed a *pro se* petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket 1).  Petitioner is being held by Arizona Department of Corrections Director Dora B. Schriro, the named respondent, based on convictions in Maricopa County for first degree burglary, second degree burglary, two counts of  kidnapping, aggravated robbery, robbery, aggravated assault, two counts of sexual assault, attempted sexual assault, and attempted second degree murder.  Petitioner alleges four grounds for relief:

      1. Petitioner's Eighth Amendment rights were violated when he was convicted with insufficient evidence;

      2. Petitioner received ineffective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments;

      3. Petitioner was given an aggravated sentence in violation of the Sixth Amendment

1    and the Supreme Court's decision in *Blakely v. Washington*[1];

2    4. The trial court erred by not granting Petitioner's motion for change of venue despite

3    pre-trial media attention, in violation of the Sixth Amendment.

4    Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate

5    Judge Charles R. Pyle for a report and recommendation.  The Magistrate Judge recommends

6    the District Court, after independent review of the record, enter an order **granting in part**

7    the Petition (Docket 1).

8

9    **FACTS AND PROCEDURAL HISTORY**

10    On September 15, 1997, at approximately 3:30 in the afternoon, the Petitioner entered

11    the unlocked apartment of A.K., a nineteen-year-old female student at Arizona State

12    University.  (Respondent's Answer, Exhibit[2] A, p. 2., Exhibit[3] E, "Factual and Procedural

13    History".)  Petitioner grabbed A.K. by the throat, beat and strangled her. (*Id.* at 3.)  During

14    the course of the attack, Petitioner forced her into a closet and beat her; pounded her head

15    against the wall; forced her to write a check out to him; forced her to disrobe; choked her

16    until she passed out; forced her to perform oral sex. (*Id.*)  Petitioner used a pair of scissors

17    to slice A.K. on both knees, slash her in her breast, and stab her in the neck. (*Id.*)

18    On September 16, 1997, at approximately 7:00 p.m. when N.G., an eighteen-year-old

19    female student at Arizona State University answered the door to her dorm room, Petitioner

20    and another man forced their way inside. (*Id.*)  Petitioner choked N.G. causing her to pass

21    out and when N.G. regained consciousness she heard Petitioner say, "She's not dead yet."

22    (*Id.*)  During the course of this incident, Petitioner severely beat N.G.; held her on the bed

23    while the other man pulled her clothes off and raped her; attempted to force her to perform

24    oral sex; and raped her. (*Id.*)  Petitioner took N.G.'s wallet, check book, and gym bag. (*Id.*)

25

26    [1]542 U.S. 296, 124 S.Ct. 2531(2004).

27    [2]Unless otherwise noted all Exhibits refer to those Exhibits attached to Respondent's Answer.

28    [3]Exhibit E is a copy of the Petition for Post-Conviction Relief filed by Petitioner

1    Petitioner was charged under one cause number for both incidents, however, he
2    received a separate trial for each incident.  The jury at the first trial was charged with
3    reaching verdicts on those counts of the indictment involving the attack on A.K. (*Id.*)  At the
4    close of its case, the State moved to amend Count IX from attempted felony murder to
5    attempted premeditated murder, in order to conform with the facts presented at trial. (Exhibit
6    E, p. 7, Exhibit I[4], p.33-4)  This jury found Petitioner guilty of burglary in the first degree,
7    kidnapping, robbery, aggravated assault, sexual assault, attempted murder in the second
8    degree. (Exhibit B.)  The jury at the second trial was charged with reaching verdicts as to
9    those counts involving N.G. (Exhibit A at 4.)  The jury found Petitioner guilty of burglary
10   in the second degree, guilty of attempted sexual assault, sexual assault, kidnapping, and
11   aggravated robbery. (Exhibit B.)  The jury found Petitioner not guilty of attempted murder
12   in the first degree. (*Id.*)

13       Following the second jury trial, Petitioner was sentenced in Maricopa County Superior
14   Court for the verdicts from both trials.  Petitioner received exceptionally aggravated,
15   consecutive sentences on all guilty counts totaling 107.75 years. (Exhibit C, Exhibit E at 6.)

16       Following his trials and imposition of sentence, Petitioner appealed to the Arizona
17   Court of Appeals on the ground that the trial court had erred in suppressing only some and
18   not all of the incriminating statements that he made to police. (Exhibit A.)  The Court of
19   Appeals affirmed Petitioner's convictions and sentences, finding no error in the trial court's
20   ruling. (*Id.*)  Review of the Appellate court decision was denied by the Arizona Supreme
21   Court and an order and mandate was issued by the Appellate Court.

22       Petitioner filed a Petition for Post-Conviction Relief with the Superior Court of
23   Maricopa County.  In the petition counsel for Petitioner briefed claims on which Petitioner
24   sought relief from his convictions, including the claim of ineffective assistance of counsel.
25   (Exhibit E.)  In a minute entry dated August 30, 2002, the trial court found that Petitioner had
26   not demonstrated deficient performance of trial counsel and summarily dismissed the Petition
27
28       [4]Exhibit I is a transcript of a portion the jury trial dated April 23, 1999.

1  for Post-Conviction Relief. (Exhibit F.)  The Arizona Court of Appeals denied Petitioner's

2  request for review of the trial court's denial of post-conviction relief on February 10, 2004.

3  (Exhibit G.)  The Supreme Court of Arizona denied review of the Court of Appeals decision

4  on August 17, 2004. (Exhibit H.)  Petitioner filed his Petition for Writ of Habeas Corpus on

5  February 15, 2005, within the one year statute of limitations established by the Antiterrorism

6  and Effective Death Penalty Act of 1996.

7

8  **STANDARD OF REVIEW**

9       The Court shall not grant a petition of habeas corpus for a person who is in custody

10  based on judgment in state court unless the decision was "contrary to, or involved an

11  unreasonable application of, clearly established Federal law" or "resulted in a decision that

12  was based on an unreasonable determination of the facts in light of the evidence presented

13  in the State court proceeding." 28 U.S.C. § 2254(d).  The factual findings of the state court

14  are presumed correct. 28 U.S.C. § 2254(e)(1).  It is the burden of the petitioner to rebut this

15  presumption by clear and convincing evidence. *Id.*

16  *Exhaustion and Procedural Default*

17       A federal court may not grant a petition for writ of habeas corpus unless the petitioner

18  has exhausted the state court remedies available to him. 28 U.S.C. § 2254(b); *Baldwin v.*

19  *Reese*, 541 U.S. 27 (2004); *Castille v. Peoples*, 489 U.S. 346 (1989).  The exhaustion inquiry

20  focuses on the availability of state court remedies at the time the petition for writ of habeas

21  corpus is filed in federal court. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).  Exhaustion

22  generally requires that a prisoner give the state courts an opportunity to act on his claims

23  before he presents those claims to a federal court. *Id.*  A petitioner has not exhausted a claim

24  for relief so long as a petitioner has a right under state law to raise the claim by available

25  procedure. *See* 28 U.S.C. § 2254(d).

26       A habeas petitioner may exhaust his claims in one of two ways.  First, a claim is

27  exhausted when no remedy remains available to the petitioner in state court. *See* 28 U.S.C.

28  § 2254(b)(1)(A).  Second, a claim is exhausted if there is an absence of available state

1  corrective process, or circumstances exist that render such process ineffective to protect the

2  rights of the petitioner. *See* 28 U.S.C. § 2254(b)(1)(B).

3      To meet the exhaustion requirement, the petitioner must have "fairly present[ed] his

4  claim in each appropriate state court...thereby alerting the court to the federal nature of the

5  claim." *Baldwin*, 541, U.S. at 30; *see also Duncan v. Henry*, 513 U.S. 364, 365-66 (1995).

6  A petitioner fairly presents a claim to the state court by describing the factual or legal basis

7  for that claim and by alerting the state court "to the fact that the...[petitioner is] asserting

8  claims under the United States Constitution." *Duncan*, 513 U.S. at 365-66.

9      Furthermore, to fairly present a claim, the petitioner "must give the state court one full

10  opportunity to resolve any constitutional issues by invoking one complete round of the State's

11  established appellate review process." *O'Sullivan*, 526 U.S. at 845.  Once a federal claim has

12  been fairly presented to the state courts, the exhaustion requirement is satisfied. *See Picard*

13  *v. Connor*, 404 U.S. 270, 275 (1971).  In habeas petitions, other than those concerning life

14  sentences or capital cases, the claims of Arizona state prisoners are exhausted if they have

15  been fairly presented to the Arizona Court of Appeals, either on appeal of conviction or

16  through a collateral proceeding pursuant to Rule 32 of the Arizona Rules of Criminal

17  Procedure. *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999).

18      In some instances a claim can be technically exhausted even though the state court did

19  not address the merits.  This situation is referred to as "procedural bar" or "procedural

20  default."  A claim is procedurally defaulted if the state court declined to address the issue on

21  the merits for procedural reasons. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir.2002).

22  Procedural default also occurs if the claim was not presented to the state court and it is clear

23  the state could now refuse to address the merits of the claim for procedural reasons. *Id.*  The

24  procedural bar provides an independent and adequate state-law ground for the conviction and

25  sentence and, thus, prevents federal habeas corpus review unless the petitioner can

26  demonstrate cause and prejudice for failing to raise the claim in the state proceedings. *Gray*

27  *v. Netherland*, 518 U.S. 152, 161-62 (1996); *see also Murray v. Carrier*, 477 U.S. 478, 485-

28  95 (1986); *Franklin*, 290 F.3d at 1231.  Accordingly, the procedural default doctrine prevents

1   state prisoners from obtaining federal review by allowing the time to run on available state

2   remedies and then rushing to federal court seeking review. *Coleman v. Thompson*, 501 U.S.

3   722, 731-32 (1991).

4         If the claim has never been presented to the state court, a federal habeas court may

5   determine whether state remedies remain available. *See Harris v. Reed*, 489 U.S. 255, 269-70

6   (9189); *Franklin*, 290 F.3d at 1231.   In Arizona, such a determination often involves

7   consideration of Rule 32 *et seq*. of the Arizona Rules of Criminal Procedure governing post-

8   conviction relief proceedings.  For example, Ariz.R.Crim.P.32.1 specifies when a petitioner

9   may seek relief in post-conviction proceedings based on federal constitutional challenges to

10  convictions or sentences.  Under Rule 32.2, relief is barred on any claim which could have

11  been raised in a prior Rule 32 petition for post-conviction relief, with the exception of certain

12  claims[5] which were justifiably omitted from a prior petition. Ariz.R.Crim.P.32.2.

13        In summary, failure to exhaust and procedural default are different concepts. *Franklin*,

14  290 F.3d at 1230.  Under both doctrines, the federal court may be required to refuse to hear

15  a habeas claim. *Id.*  The difference between the two is that when a petitioner fails to exhaust,

16  he may still be able to return to state court to present his claims there. *Id.*   In contrast,

17  "[w]hen a petitioner's claims are procedurally barred and a petitioner cannot show cause and

18  prejudice for the default, however, the district court dismisses the petition because the

19  petitioner has no further recourse in state court." *Id.* at 1231.

20  *Review of Merits*

21        Pursuant to the provisions of the AEDPA, the Court may grant a writ of habeas corpus

22  only if the state court proceeding:

23        (1)    resulted in a decision that was contrary to, or involved an unreasonable

24

25        [5]Such claims include: (1) that the petitioner is being held in custody after his sentence has expired; (2) certain
26  circumstances where newly discovered material facts probably exist and such facts probably would have changed the
    verdict or sentence; (3) the petitioner's failure to file a timely notice of post-conviction relief was without fault on his
    part; (4) there has been a significant change in the law that would probably overturn petitioner's conviction if applied
27  to his case; and (5) the petitioner demonstrates by clear and convincing evidence that facts underlying the claim would
    be sufficient to establish that no reasonable fact-finder would have found petitioner guilty beyond a reasonable doubt.
28  Ariz.R.Crim.P.32.2(b) (citing Ariz.R.Crim.P.32.1(d)-(h)).

1    application of, clearly established Federal law, as determined by the Supreme

2    Court of the United States; or

3    (2)    resulted in a decision that was based on an unreasonable determination of the

4    facts in light of the evidence presented in the State court proceeding.

5    28 U.S.C. § 2254(d).  Section 2254(d)(1) applies to challenges to purely legal questions

6    resolved by the state court and section 2254(d)(2) applies to purely factual questions resolved

7    by the state court. *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir.2004), *cert. denied* 126

8    S.Ct. 484 (2005).  Therefore, the question whether a state court erred in applying the law is

9    a different question from whether it erred in determining the facts. *Rice v. Collins*, __ U.S.

10    __, 126 S.Ct. 969 (2006).

11    Section 2254(d)(1) consists of two alternative tests, i.e., the "contrary to" test and the

12    "unreasonable application" test. *See Cordova v. Baca*, 346 F.3d 924, 929 (9th Cir.2003).

13    Under the first test, the state court's "decision is contrary to a clearly established federal law

14    if it fails to apply the correct controlling authority, or if it applies the controlling authority

15    to a case involving materially indistinguishable from those in a controlling case, but

16    nonetheless reaches a different result." *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir.2003)

17    (*citing Williams v. Taylor*, 529 U.S. 362, 413-14 (2000)).  Additionally, a state court's

18    decision is "'contrary to' Supreme Court case law if the state court 'applies a rule that

19    contradicts the governing law set forth in' Supreme Court cases."[6] *Lynn v. Farmon*, 347 F.3d

20    735, 738 (9th Cir.2003) *cert. denied* 541 U.S. 1037 (2004) (*quoting Early v. Packer*, 537 U.S.

21    3, 8 (2002)).  "Whether a state court's interpretation of federal law is *contrary* to Supreme

22    Court authority...is a question of federal law as to which [the federal courts]...owe no

23    deference to the state courts." *Cordova*, 346 F.3d at 929 (emphasis in original)

24    (distinguishing deference owed under the "contrary to" test of section (d)(1) with that owed

25    ⎯⎯⎯⎯⎯⎯⎯⎯⎯

26    [6]"[T]he *only* definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams*, 529 U.S. at 412...While circuit law may be 'persuasive authority' for purposes of determining whether a state court decision is an unreasonable application

27    of Supreme Court law, *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir.1999), only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied." *Clark*, 331 F.3d at 1069 (emphasis

28    in original).

1   under the "unreasonable application" test).

2          Under the second test, "'[a] state court's decision involves an unreasonable application

3   of federal law if the state court identifies the correct governing legal principle...but

4   unreasonably applies that principle to the facts of the prisoner's case.'" *Lynn*, 347 F.3d at 738

5   (quoting *Clark*, 331 F.3d at 1067).  Under the "'unreasonable application clause...a federal

6   habeas court may not issue the writ simply because that court concludes in its independent

7   judgment that the relevant state-court decision applied clearly established federal law

8   erroneously or incorrectly...[r]ather that application must be objectively unreasonable.'"

9   *Clark*, 331 F.3d at 1068 (*quoting Lockyer v. Andrade*, 538 U.S. 63 (2003)).  When evaluating

10  whether the state decision amounts to an unreasonable application of federal law, "[f]ederal

11  courts owe substantial deference to state court interpretations of federal law." *Cordova*, 346

12  F.3d at 929.

13         Under section 2254(d)(2), which involves purely factual questions resolved by the

14  state court, "the question on review is whether an appellate panel, applying the normal

15  standards of review, could reasonably conclude that the finding is supported by the record."

16  *Lambert*, 393 F.3d at 978; *see also Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir.2004), *cert.*

17  *denied* 534 U.S. 1038 (2004) ("a federal court may not second-guess a state court's fact-

18  finding process unless, after review of the state-court record, it determines that the state court

19  was not merely wrong, but actually unreasonable.").  Section (d)(2) "applies most readily to

20  situations where petitioner challenges the state court's findings based entirely on the state

21  record.  Such a challenge may be based on the claim that the finding is unsupported by

22  sufficient evidence,...that the process employed by the state court is defective,...or that no

23  finding was made at the state court at all." *Taylor*, 366 F.3d at 999 (citations omitted).  In

24  examining the record under section 2254(d)(2), the federal court "must be particularly

25  deferential to our state court colleagues.'...[M]ere doubt as to the adequacy of the state court's

26  findings of fact is insufficient; 'we must be satisfied that *any* appellate court to whom the

27  defect [in the state court's fact-finding process] is pointed out would be unreasonable in

28  holding that the state court's fact-finding process was adequate.'" *Lambert*, 393 F.3d at 972

(*quoting Taylor*, 266 F.3d at 1000) (emphasis in original).  Once the federal court is satisfied that the state court's fact-finding process was reasonable, or where the petitioner does not challenge such findings, "the state court's findings are dressed in a presumption of correctness [pursuant to 28 U.S.C. § 2254(e)[7]], which then helps steel them against any challenge based on extrinsic evidence, i.e., evidence presented for the first time in federal court." *Taylor*, 366 F.3d at 1000.

Section 2254(d)(1) and section 2254(d)(2) may both apply where the petitioner raises issues of mixed questions of law and fact.  Such questions "receive similarly mixed review; the state court's ultimate conclusion is reviewed under 2254(d)(1), but its underlying factual findings supporting that conclusion are clothed with all of the deferential protection ordinarily afforded under 2254(d)(2) and (e)(1)." *Lambert*, 393 F.3d at 978.

## DISCUSSION

### *Timeliness*

A one year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. 28 U.S.C. § 2244(d)(1). Respondents concede that Petitioner's petition for writ of habeas corpus was filed within the one year statute of limitations.[8] (Answer, pg. 3).

### *Exhaustion*

Respondent asserts that Petitioner has failed to exhaust Grounds I, III, and IV.  In his direct appeal, Petitioner raised the sole claim that the trial court erred in suppressing some but not all of the statements made by Petitioner to the police. (Exhibit A).  In his Rule 32

---

[7]Under section 2254(e) "a determination of a factual issue made by a State court shall be presumed to be correct." "State-court fact-finding may be overturned based on new evidence presented for the first time in federal court only if such new evidence amounts to clear and convincing proof that the state-court finding is in error...Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into place once" it is found that the state court did not unreasonably determine the facts in light of the evidence presented in the state proceeding. *Taylor*, 966 F.3d at 1000.

[8]Calculation of time under AEDPA excludes the time during which properly filed state post-conviction applications are pending. 28 U.S.C. 2244(d)(2).

1   Petition, Petitioner alleged three grounds for relief.  Those grounds were (1) ineffective
2   assistance of trial and appellate counsel; (2) amendment of the attempted felony murder
3   charge violated due process; (3) his consecutive sentences violated the merger doctrine and
4   the prohibition against double punishment.[9] (Exhibit E).  With the exception of Petitioner's
5   ineffective assistance of counsel claim, none of the grounds raised in the pending habeas
6   petition were raised in state court.  Respondents argue that as such all but Petitioner's
7   ineffective assistance of counsel claim are procedurally barred.

8           *Grounds One, Three, and Four*

9           Petitioner concedes that, other than his ineffective assistance of counsel claim, he did
10   not present the claims contained in this habeas petition to the state court. (Reply, p.2).
11   However, he contends that these issues were not presented at the state level on advice of
12   counsel. (*Id.*).

13          Under 28 U.S.C. § 2254(b)(1), habeas relief shall not be granted unless the claim was
14   exhausted in state court, there is an absence of available state corrective process to exhaust
15   the claim, or circumstances exist which render the state process ineffective to protect the
16   petitioner's rights.  A federal court will not review a claim where a petitioner procedurally
17   defaulted a claim in state court, unless the petitioner can demonstrate cause and prejudice for
18   not presenting the constitutional claim or makes a colorable showing of actual innocence.
19   *Gray v. Netherland,* 518 U.S. 152, 162 (1996).

20          Rule 32.2 of the Arizona Rules of Criminal Procedure specifically precludes relief
21   based on grounds raisable on direct review or post-trial motion or that has been waived at
22   trial, on appeal or in previous collateral review proceedings. *See Stewart v. Smith*, 202 Ariz.
23   446, 46 P.3d 1067 (Ariz. 2002) (en banc) (holding that issues not raised on appeal are waived
24   unless the issue is of sufficient constitutional magnitude is involved requiring a knowing,
25   voluntary, intelligent waiver of the right by the defendant).  The Arizona Supreme Court in

26   _____

27   [9]Petitioner does not assert in his Petition for Writ of Habeas Corpus (Docket 1) that the amendment of the
    indictment violate his right to due process nor that his consecutive sentences violated the merger doctrine.  The only
    claim asserted by Petitioner in both his Rule 32 Petition and his Petition for Writ of Habeas Corpus is his claim that he
28   received ineffective assistance of both trial and appellate counsel.

1  it's decision in *Stewart v. Smith*, cited issues such as waiver of right to counsel and waiver

2  of right to trial by jury as those issues of sufficient constitutional magnitude to require a

3  knowing, voluntary and intelligent waiver by the defendant. *Id.*  Petitioner has raised

4  insufficiency of the evidence, *Blakely* violations, and pre-trial error by the trial court in

5  failing to grant a change of venue.  These are not the types of issues implicated by *Stewart*

6  *v. Smith*.  Furthermore, Petitioner signed a certification attached to his petition for post-

7  conviction relief stating,

8          "I certify that this petition includes all the claims and grounds
           for post-conviction relief that are known to me, that I understand
9          that no further petitions concerning this conviction may be filed
           on any ground of which I am aware but do not raise at this
10         time."

11  (Exhibit E, p.24).  This certification would imply a knowing, intelligent, voluntary waiver

12  by Defendant.  As such Petitioner is barred from returning to state court to present his

13  unexhausted claims.

14          By not presenting his claims to the state court, Petitioner has procedurally defaulted

15  them.  "[A] habeas petitioner who has failed to meet the State's procedural requirements for

16  presenting his federal claims has deprived the state courts of an opportunity to address those

17  claims in the first instance." *Coleman*, 501 U.S. at 732.  Petitioner may overcome this bar

18  only if he shows cause and prejudice for the default. *Manning v. Foster*, 224 F.3d 1129,

19  1132-33 (9th Cir.2000); *Gray,* 518 U.S. 152.

20          Petitioner argues that he requested that his counsel raise these claims but that appellate

21  counsel refused to raise them on appeal.  As a general rule, a habeas petitioner bears the risk

22  of attorney error even if the attorney is ineffective. *Manning*, 224 F.3d at 1135 *citing*

23  *Coleman*, 501 U.S. at 753.  According to the *Manning* Court, attorney errors are *not*

24  attributable to the client *only* when the attorney is acting on his or her own behalf and does

25  not actually represent the client. *Id. citing Deutscher v. Angelone*, 16 F.3d 981 (9th Cir.1994).

26  Here Petitioner has not made a showing of actual conflict of interest nor has he shown that

27  his counsel was acting on his own behalf.  Petitioner has failed to show that the procedural

28  default in this case is due to objective factors that cannot be attributed to him. *Id.* at 1133

1    *citing* Coleman, 501 U.S. at 753.  As such, Petitioner has failed to show cause and prejudice.

2          Because Petitioner would not be able to return to state court and assert these claims,

3    and because he has failed to establish cause and prejudice, Grounds One, Three[10], and Four

4    this Court recommends that the District court dismiss them as procedurally barred.

5               *Ground Two - Ineffective Assistance of Counsel*

6          Respondents concede that this claim was properly exhausted in state court. (Answer,

7    p.7).  In his Petition, Petitioner argues that both his trial and appellate counsel were deficient.

8    He argues that his trial counsel was ineffective in failing to "ascertain that attempted felony

9    murder was not a cognizable crime" and by failing to object when the prosecutor moved to

10   amend the indictment to attempted premeditated murder in order to conform to the evidence.

11   (Petition, p.6; Answer, p.7).  Petitioner further argues that his appellate counsel was

12   ineffective when he failed to assert claims that Petitioner wanted to raise with the appellate

13   court. (Petition, p.6).

14         Respondents argue that Petitioner has failed to establish prejudice as required by the

15   second prong of the *Strickland* test.  They argue that Petitioner was not prejudiced with

16   respect to the count involving victim N.G.[11] because he was acquitted of attempted murder.

17   (Answer, p. 8).  Respondents contend that Petitioner has not shown prejudice as to the count

18   involving A.K.[12] because defense counsel's acquiescence to the State's request to amend the

19   charge to attempted premeditated murder was trial strategy. (*Id.*).  Respondents further argue

20   that this strategy worked because Petitioner was convicted of the lesser included charge of

21   attempted second degree murder. (*Id.*).

22

23          [10]Petitioner asserts in Ground Three that his conviction violates the recent Supreme Court Decision in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004).  Even were this claim not procedurally barred, it would fail because *Blakely* is not retroactive. *See Cook v. U.S.*, 386 F.3d 949; *Schriro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519 (2004). *Blakely* applies only to those cases that were on direct review and not yet final when it was decided. *Schardt v. Payne*, 414 F.3d 1025 (9th Cir. 2004); *Cook v. United States*, 386 F.3d 949 (9th Cir. 2004); *Cooper-Smith v. Palmateer*, 397 F.3d 1236 (9th Cir. 2005).  Petitioner's direct review terminated when the Arizona Court of Appeals issued its order and mandate on April 9, 2001 (Exhibit D), three years before the Supreme Court's decision in *Blakely*.

27          [11]Count XI, hereinafter Count 11

28          [12]Count IX, hereinafter Count 9

1    Petitioner asserted that he received ineffective assistance of both trial and appellate

2    counsel in his Rule 32 petition. (Exhibit D, p.17-22).  Petitioner is entitled to relief if the state

3    court's decision rejecting his ineffective assistance of counsel claim was either "contrary to,

4    or involved an unreasonable application of," established law. *Williams v. Taylor*, 529 U.S.

5    362, 391 (2000).  The established law governing the merits of ineffective assistance of

6    counsel claims is expressed in *Strickland v. Washington*, 466 U.S. 668 (1984).  The general

7    standard for attorney performance is that of "reasonably effective assistance." *Id.*   The

8    *Strickland* test requires a petitioner to establish both deficient performance by counsel and

9    prejudice resulting from that performance to obtain relief. *See Luna v. Cambra*, 306 F.3d

10   954, 961 (9th Cir. 2002), *amended*, 311 F.3d 928.

11   In denying his petition for post-conviction relief, the trial court found that Petitioner

12   had "not demonstrated deficient performance of either or both trial and/or appellate counsel

13   in these proceedings." (Exhibit F).  However, the trial court's minute entry is not a detailed,

14   reasoned opinion. (*Id.*).  The entire minute entry is as follows:

15              The Court has considered Defendant's Petition for Post-
             Conviction Relief and State's Response.  The Court finds that
16           Defendant has not demonstrated deficient performance of either
             or both trial and/or appellate counsel in these proceedings.
17           Accordingly,
                IT IS ORDERED summarily dismissing Defendant's
18           Petition for Post-Conviction Relief.

19   (*Id.*)  This does not necessarily mean that the trial court's decision was contrary to or an

20   unreasonable application of federal law.

21   Petitioner has failed to show prejudice as to the count involving victim N.G. because

22   he was not convicted of attempted premeditated murder.  As such, the trial court's finding

23   that Petitioner had not established deficient performance of counsel as it related to Count 11,

24   is not an unreasonable application of the standard set forth in *Strickland*.

25   Turning to Count 9, involving A.K., Petitioner was not convicted of the amended

26   count of attempted premeditated murder.  Petitioner was, however, convicted of the lesser

27   included charge of attempted murder in the second degree. (Exhibit B).  Petitioner's counsel

28   originally objected to amending the charge at such a late date. (Exhibit I, p.33-34).  The State

argued that the count should be amended to conform to the evidence. (*Id.* at 34).  Petitioner's counsel withdrew his objection after reading the State's motion. (*Id.*).  After amending the count to attempted premeditated murder, Petitioner's attorney argued that he was entitled to the "lesser-included instruction of Second Degree Murder." (*Id.* at 35).  The State and the Court agreed and the lesser included instruction was given to the jury. (*Id.*; Exhibit B[13]).

Amendments of charges and defects in charging documents are governed by Rule 13.5 of the Arizona Rules of Criminal Procedure.  Rule 13.5(b) states:

> The preliminary hearing or grand jury indictment limits the trial to the specific charges stated in the magistrate's order or grand jury indictment.  The charge may be amended only to correct mistakes of fact or remedy formal or technical defects, unless the defendant consents to the amendment.  The charging document shall be deemed amended to conform to the evidence adduced at any court proceeding.

The court has considerable discretion when resolving motions to amend. *State v. Delgado*, 174 Ariz. 252, 254, 848 P.2d 337, 339 (Ariz. Ct. App.1993) *citing State v. Sammons*, 156 Ariz. 51, 54, 749 P.2d 1372, 1375 (1988).  This discretion, however, is not without limitations.  In determining whether or not to allow an amendment the court must consider a defendant's constitutional rights. *Delgado*, 848 P.2d at 340 *citing State v. Phelps*, 125 Ariz. 114, 119, 608 P.2d 51, 56 (App.1979).

The court must consider whether or not the amendment would violate two important rights of the defendant: "(1) the defendant must have been put on notice of the charges against him with an ample opportunity to prepare to defend against them; and (2) the acquittal of the amended charge must provide a double jeopardy defense to a subsequent prosecution on the original charge." *State v. Barber*, 133 Ariz. 572, 577 653 P.2d 29, 34 (Ariz. Ct. App. 1982) *citing State v. Phelps*, 125 Ariz. 114, 608 P.2d 51 (App.1979).  In determining what amendments are constitutionally permitted, the court must consider "whether the amendment changes the nature of the offense charged or prejudices the defendant in any way." *State v. Sanders*, 205 Ariz. 208, 214, 68 P.3d 434, 440 (Ariz. Ct. App.

---

[13]Verdict form, finding Petitioner guilty of attempted second degree murder.

1   2003) *citing State v. Bruce*, 125 Ariz 421, 423, 610 P.2d 55, 57 (1980).

2     Permissible amendments are those which correct a minor or technical defect, such as

3   changing one digit of the serial number in a prosecution for receiving stolen property;

4   changing a corporate name in a securities fraud proceeding; changing the date of the offense

5   by one day when defendant knew long before trial of the correct date. *Sanders*, 68 P.3d at

6   440 (citations omitted); *State v. Johnson*, 198 Ariz. 245, 247, 8 P.3d 1159, 1162 (Ariz. Ct.

7   App.2000).  However, an amendment is not technical in nature when it operates to change

8   the nature of the offense. *Sanders*, 68 P.3d at 440; *Barber*, 653 P.2d at 34 *citing State v.*

9   *Bruce*, 125 Ariz. 421, 610 P.2d 55 (1980).

10    In the present case, the State moved at the close of evidence to amend the indictment,

11  amending Count 9 of the indictment from attempted first degree felony murder to attempted

12  first degree premeditated murder, to conform to the evidence. (Exhibit I, p.33-34).

13  Attempted felony murder is not a cognizable crime in Arizona. *State v. Rutledge*, 197 Ariz.

14  389, 4 P.3d 444 (Ariz. Ct. App.2000).  This amendment is more than technical in nature.

15  Amendment of an indictment from a noncognizable crime to a cognizable one, changes the

16  nature of the offense. *See Sanders*, 68 P.3d at 214.  The elements of the underlying murder

17  charges are also different, making the amendment more than technical in nature, even were

18  attempted felony murder a cognizable crime.  Felony murder requires no specific mental state

19  other than the mental state required for the commission of the felony. A.R.S. § 13-1105(B).

20  Premeditated murder requires that the person intend or know that his/her conduct will cause

21  death and that intention or knowledge precedes the killing by any length of time to permit

22  reflection. A.R.S. §13-1105(A)(1); A.R.S. §13-1101(1).

23    Petitioner's counsel initially objected on the grounds that a change in the indictment

24  at such a late date, after trial strategy had been established and cross-examination of the

25  witnesses,  was unfair to Petitioner. (Exhibit I, p.33-34).  However, counsel withdrew his

26  objection and allowed the indictment to be amended. (*Id.*).  Had trial counsel maintained the

27  objection, under the Arizona case law, the State should not have been allowed to amend the

28  indictment. *Sanders*, 68 P.3d 434 (holding that "an amendment proposed mid-trial that

- 15 -

1   changes the nature of the original charge deprives an accused of the type of notice and

2   opportunity to prepare a defense contemplated by the Sixth Amendment and is therefore not

3   permitted by Rule 13.5(b)"); *Johnson*, 8 P.3d 1159 (holding that amendment of the

4   indictment at the close of evidence as to what type of sexual conduct had occurred did not

5   provide defendant adequate opportunity to prepare defense and as such defendant was

6   prejudiced); Ariz.R.Crim.P. 13(b).   As such, Petitioner's trial counsel rendered deficient

7   performance in allowing the state to amend the indictment at such a late date.  The purpose

8   of the Sixth Amendment guarantee to effective assistance of counsel is to ensure that

9   defendants receive a fair trial. *Strickland*, 466 U.S. 689.  "A trial cannot be fair unless the

10  nature of the charges against a defendant are adequately made known to him or her in a

11  timely fashion." *Sheppard v. Rees*, 909 F.2d 1234, 1237 (9th Cir.1990) *citing Strickland v.*

12  *Washington*. 466 U.S. 668, 685, 104 S.Ct. 2052, 2063(1984).

13          Having established that trial counsel's performance was deficient, Petitioner must also

14  establish that this deficient performance prejudiced him. *Strickland*, 466 U.S. 687.  "This

15  requires a showing that counsel's errors were so serious as to deprive defendant of a fair trial,

16  a trial whose result is reliable." *Id.*  This means that were it not for counsel's errors, there is

17  a reasonable probability that the results would have been different.  In the present case, trial

18  counsel's deficient performance allowed the State to amend the indictment, changing the

19  nature of the offense contained in Count 9 and violating Petitioner's Sixth Amendment right

20  to adequate notice of the charges against him.  A reasonable probability exists that had trial

21  counsel maintained his objection to the amendment, the State would not have been allowed

22  to amend the indictment.  Without amending the indictment, the State could not go forward

23  on the attempted murder charge since it is not a cognizable crime.

24          Petitioner has successfully satisfied both the deficient performance prong as well as

25  the prejudice prong of the test established for an ineffective assistance of counsel claim by

26  the Supreme Court in *Strickland v. Washington.*  As such, the trial court's conclusion that

27  Petitioner had not demonstrated deficient performance of trial counsel is an unreasonable

28  application of federal law as established in *Strickland v. Washington*.

Petitioner also argues that he received ineffective assistance of appellate counsel because appellate counsel did not raise all of the issues that Petitioner wanted raised on appeal.  He argues that appellate counsel left unraised issues that were more likely to obtain relief than the issues raised on appeal.  In his Reply, Petitioner includes a long list of issues that he wanted his appellate counsel to raise on appeal.[14]  (Docket 19, p.3).  Ineffective assistance of appellate counsel claims are also subject to the standard set forth in *Strickland*. *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir.1989) *citing United States v. Birtle*, 792 F.2d 846, 847 (9th Cir.1986).  Effective appellate advocacy includes the "weeding out of weaker issues." *Miller*, 882 F.2d at 1434.  Appellate counsel does not have a constitutional obligation to raise every nonfrivolous issue that the defendant wants raised. *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308 (1983); *Miller*, 882 F.2d at 1434 n.10 *citing Jones*.  Appellate counsel's decision to raise only the issue regarding the trial court's failure to suppress all of the self-incriminating statements made to police, is consistent with an appellate strategy to raise what counsel perceives to be the strongest argument on appeal.

While Petitioner includes a long list of claims that he wanted raised, he has not shown that appellate counsel's decision to pursue only the issue of self-incriminating statements to the police fell below an objective standard of reasonableness.  Nor has Petitioner shown that any of the proposed claims in his list would have been more likely to succeed on appeal.  Petitioner has failed to establish prejudice.  Because Petitioner has not satisfied the *Strickland* test, it was not an unreasonable application of federal law for the trial court to find that appellate counsel's performance was not deficient.

The Magistrate Judge recommends that the District Judge find that Petitioner has established ineffective assistance of counsel only as to the amendment of Count 9 of the indictment from attempted first degree felony murder to attempted first degree premeditated murder.  The Magistrate Judge therefore recommends that the District Judge grant, as to the ineffective assistance of counsel claim relating to Count 9, Petitioner's Petition for Writ of

---

[14]Petitioner's list includes: insufficient evidence; prosecutorial misconduct; abuse of trial court discretion; ineffective assistance of counsel; use of hearsay testimony.

1   Habeas Corpus.  The Magistrate Judge recommends that the remainder of the Petition be
2   denied.

3

4   **MOTION FOR RELEASE**

5        Petitioner filed a motion entitled "Petition For: Release of A Prisoner in a Habeas
6   Proceeding." (Docket 25).  Respondents did not file a response.

7        Petitioner requests that the Court release him pursuant to Rule 23(a) and (c) of the
8   Federal Rules of Appellate Procedure.  Petitioner requests that he be released to the custody
9   of his elderly father, who is in poor health.

10        In the habeas context, a petitioner will only be released in an extraordinary case where
11   the petitioner has shown special circumstances or high probability of success. *U.S. v. Mett*,
12   41 F.3d 1281, 1282 (9th Cir.1994) *citing Land v. Deeds*, 878 F.2d 318 (9th Cir.1989); *In re*
13   *Roe*, 257 F.3d 1077 (9th Cir.2001).  A special circumstance would be the serious deterioration
14   of the inmates health while incarcerated. *Mett*, 41 F.3d 1281, 1282 n4 *quoting Salerno v.*
15   *United States* , 878 F.2d 317 (9th Cir.1989).  Petitioner has not made such a showing in this
16   case.  While the Magistrate Judge has recommended granting in part Petitioner's Petition for
17   Writ of Habeas Corpus, this recommendation would only effect 12.5 years of Petitioner's
18   107.75 year sentence.  As such, this would not warrant release.

19        The Magistrate Judge, therefore, recommends that the District Judge enter an order
20   denying Petitioner's motion for release (Docket 25).

21

22   **CONCLUSION**

23        For the foregoing reasons, the Magistrate Judge recommends that the District Judge,
24   after independent review of the record, **grant in part** Petitioner's Petition for Writ of Habeas
25   Corpus (Docket 1).  The Magistrate Judge further recommends that the District Judge **deny**
26   Petitioner's motion for release (Docket 25).

27        Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within
28   10 days of being served with a copy of this report and recommendation.  If objections are not

1    timely filed, the party's right to de novo review may be waived. *See United States v. Reyna-*
2    *Tapia*, 328 F.3d 1114, 1121 (9 th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).
3    If objections are filed, the parties should direct them to the District Court by using the
4    following case number: **CV 05-540-PHX-NVW**.
5        DATED this 6th day of February, 2007.

6

7

8    **CHARLES R. PYLE**
     **UNITED STATES MAGISTRATE JUDGE**
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28